**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

IN RE:

**Gary Ward Atkinson**

**DEBTOR**

**CASE NO. 18-32633**

**CHAPTER 13**

**NOTICE OF HEARING AND MOTION**
**FOR RELIEF FROM STAY**

TO:  The Gary Ward Atkinson and other entities specified in Local Rule 9013-3(a).

1.  Cenlar, FSB as servicer for CitiMortgage, Inc.,  servicer for U.S. Bank National Association as trustee for CMALT REMIC 2007-A7 - REMIC Pass-Through Certificates Series 2007-A7 (hereinafter "Movant"), by its undersigned attorneys, moves the Court for relief requested below and gives Notice of Hearing.

2.  The Court will hold a Hearing on this motion at 11:00 a.m., on November 24, 2021, in Courtroom No. 2C, at Warren E. Burger Federal Building and United States Courthouse, 2nd Floor, 316 N. Robert Street, St Paul, Minnesota 55101.

3.  Any response to this Motion must be filed and delivered no later than Friday, November 19, 2021, which is five (5) days before the time set for the hearing (including Saturdays, Sundays, and holidays).  UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.  This court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Federal Rule of Bankruptcy Procedure 5005, and Local Rule 1070-1.  This proceeding is a core proceeding.

5.  The petition commencing this case was filed on August 21, 2018.

6.  This Motion arises under 11 U.S.C. § 362(d) and Federal Rule of Bankruptcy Procedure 4001.  This Motion is filed pursuant to Fed. R. Bankr. P. 9014 and Local Rules 4001-1 and 9013-1 through 9019-3.

7.     Movant Requests Relief from the automatic stay with respect to real property of subject to a mortgage lien, effective immediately, notwithstanding Fed. R. Bankr. P. 4001(a)(3).

8.     Gary W. Atkinson executed a promissory note in the original amount of $314,800.00 dated May 18, 2007 (hereinafter the "Note" or "Debt Agreement").

9.     The Note is either made payable to the Movant or has been duly indorsed. Movant has possession of the Note directly or through an agent.

10.     The Note is secured by a valid, perfected mortgage lien (hereinafter the "Mortgage"), executed by Gary W. Atkinson encumbering real property located at 7800 Somerset Road, Woodbury, Minnesota 55125 and legally described as:

Lot 3, Block 1, Woodbury Pines 1st Addition, Washington County, Minnesota Abstract Property

11.     Movant is the holder of the Mortgage pursuant to assignment(s) of mortgage and is entitled to enforce the terms thereof.

12.     The Note and Mortgage provide that failure to make the payments due under the Note are a condition of default, the occurrence of which gives Movant the right to proceed with foreclosure of the Mortgage.

13.     The Debtor previously filed for Chapter 13 bankruptcy on August 1, 2012, Case No. 12-34476, and Chapter 13 bankruptcy on May 3, 2016, Case No. 16-31483, and Chapter 13 bankruptcy on May 19, 2017, Case No. 17-31660.

14.     The last two Chapter 13 bankruptcy cases were dismissed for failure to file required documents under 521(i). [See Order Dismissing Case filed May 18, 2016, ECF No. 8, Case No. 16-31483 and Order Dismissing Case filed June 5, 2017, ECF No. 7, Case No. 17-31660].

15.     As of September 14, 2021, the total amount of the Mortgage default is $107,191.51, which is detailed on Local Form 4001-1.

16.     As of September 14, 2021, the total balance owed under the Mortgage was $646,646.85.

17.     The current tax assessed value of the property is $349,500.00.  The Debtor estimated the value of the property as $275,000.00.  Based upon available information, the Movant adopts $275,000.00 as the estimated fair market value of the property.

18.    In order to protect its interest in the secured property of the Debtor, the Movant must pursue its remedies to foreclose under Minnesota law.  Movant has and will incur legal fees and costs to protect and enforce its rights in the property.

19.    Cause exists for the Court to vacate the automatic stay imposed by 11 U.S.C. § 362(a), because the Debtor has failed to provide Movant with adequate protection.  Debtor has failed to comply with the requirements of the chapter 13 plan Confirmed April 11, 2019.

20.    **This is an attempt to collect a debt and any information obtained will be used for that purpose.**  This notice is required by the provisions of the Fair Debt Collection Practices Act and does not imply that we are attempting to collect money from anyone who has discharged the debt under the Bankruptcy Laws of the United States.

WHEREFORE, pursuant to 11 U.S.C. § 362(d), Cenlar, FSB as servicer for CitiMortgage, Inc., servicer for U.S. Bank National Association as trustee for CMALT REMIC 2007-A7 - REMIC Pass-Through Certificates Series 2007-A7, respectfully moves the Court for an Order:

1.    Granting relief from the automatic stay imposed by 11 U.S.C. § 362(a).

2.    Determining that the 14 day stay under Fed. R. Bankr. P. 4001(a)(3) be waived so that this order for relief is effective immediately upon entry.

3.    For such other and further relief as the Court finds equitable and just.


Dated:  November 10, 2021

*/s/ Joseph M. Rossman*
Melissa L.B. Porter 0337778
Joseph M. Rossman 0397070
LOGS Legal Group LLP
12550 West Frontage Road
Suite 200
Burnsville, MN 55337
(952) 831-4060
logsecf@logs.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

IN RE:

Gary Ward Atkinson

**EBTOR**

CASE NO. 18-32633

CHAPTER 13

## AFFIDAVIT IN SUPPORT OF MOTION FOR RELIEF FROM STAY

I, _Leia Casey_, hereby state the following:

1.  I am a duly authorized representative of Cenlar, FSB as servicer for CitiMortgage, Inc., servicer for U.S. Bank National Association as trustee for CMALT REMIC 2007-A7 - REMIC Pass-Through Certificates Series 2007-A7, ("Movant") and its successors and/or assigns, and hereby make this Affidavit in such capacity.

2.  In the course of my employment, I have become familiar with the manner and method in which Movant maintains its books and records in its regular course of business. Those books and records are managed by employees and agents whose duty is to keep the books and records accurately and completely and to record each event or item at or near the time of the event or item so noted.

3.  I have reviewed the books and records related to the Note secured by Mortgage of even date therewith covering real property located at 7800 Somerset Road, Woodbury, Minnesota 55125, and legally described as:

    > Lot 3, Block 1, Woodbury Pines 1st Addition, Washington County, Minnesota Abstract Property.

A true and correct copy of the Note is attached as Exhibit A. A true and correct copy of the Mortgage is attached as Exhibit B.

4. Cenlar FSB services the loan on the property referenced in this Motion for Relief. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of U.S. Bank National Association as trustee for CMALT REMIC 2007-A7 - REMIC Pass-Through Certificates Series 2007-A7, or its successors or assigns.

5. Said Mortgage and Note were assigned to, transferred to or acquired by CitiMortgage, Inc. and said Mortgage and Note were subsequently assigned to, transferred to or acquired by US Bank National Association as Trustee for CMALT REMIC 2007-A7 - REMIC Pass-Through Certificates Series 2007-A7. Copies of the Assignments are attached as Exhibit C.

6. Debtor is in default on his or her obligations to Movant in that Debtor has failed to make his or her installment payments when due and owing pursuant to the terms of the above-described Note and Mortgage.

7. As of September 14, 2021, the total indebtedness was $646,646.85. Debtor is due 37 post-petition payments (September 1, 2018 - June 1, 2019 @ $2,868.38, July 1, 2019 - August 1, 2020 @ $2,840.52; September 1, 2020 - August 1, 2021 @ $2,883.07 and September 1, 2021 – September 1, 2021 @ $2,905.59), totaling $105,953.51. The amount of the current monthly Mortgage installment payment is $2,905.59.

8. By failing to make the regular monthly installment payments due pursuant to the Note and Mortgage, Debtor has not provided adequate protection to Movant.

9. By failing to make the regular monthly installment payments due pursuant to the Note and Mortgage, Debtor has not provided adequate protection to Movant

10. Movant has had to retain counsel to represent it before this Court and is incurring legal expenses and attorneys' fees for which it is entitled to reimbursement under the terms of the Mortgage. The standard in the industry is for the attorney to charge a flat fee to complete a Motion for Relief from beginning to end. The fee charged is largely established and controlled by Fannie Mae, Freddie Mac, HUD or VA guidelines. The flat fee incurred to file this Motion for Relief was $1,050.00. The attorney incurred a cost of $188.00 to file the Motion. Therefore, Movant is requesting $1,238.00 in attorneys' fees and costs from the Debtor.

11. Cenlar, FSB as servicer for CitiMortgage, Inc., servicer for U.S. Bank National Association as trustee for CMALT REMIC 2007-A7 - REMIC Pass-Through Certificates Series 2007-A7, its successors and assigns, and has the authority to act on their behalf pursuant to the limited power of attorney. Attached as Exhibit "D" is said limited power of attorney.

12. The current tax assessed value of the property is $349,500.00. Attached as Exhibit "E" is a true and correct copy of the Washington County tax assessment for the subject property.

13. As of September 14, 2021, the total indebtedness to Movant was $646,646.85. The fair market value of the Property as averred by the Debtor is approximately $275,000.00.

14. Attached as Exhibit "F" is a true and correct copy of the loan history beginning on the date of the post-petition default through September 14, 2021 applicable to this Motion provided on Local Form 4001-1.

I declare that the foregoing facts are true and correct to the best of my knowledge and belief.

FURTHER AFFIANT SAYETH NAUGHT.

Our File No. 16-102869
Court File No. **18-32633**

By: _____

Print Name: _Leic Casey_

Title: _VPDE_

SUBSCRIBED AND SWORN TO before me by _Leic Casey_ on this the _26th_ day of _October_, 20 _21_, to certify which witness my hand and seal of office.

BOBBIE ANN COLE
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires February 24, 2022
ID# 2417685

Notary Public in and for the

State of _New Jersey_

EXHIBIT A



# INTEREST-ONLY PERIOD FIXED RATE NOTE

May 18, 2007                     Mendota Heights                     Minnesota
[Date]                                [City]                              [State]

7800 Somerset Road, Woodbury, MN 55125-3360
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 314,800.00           (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is CitiMortgage, Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of         6.250 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will make a payment every month. This payment will be for interest only for the first       120      months, and then will consist of principal and interest.

I will make my monthly payment on the **First**      day of each month beginning on **July 1, 2007**                 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal. If, on **June 1, 2037**                 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1000 Technology Drive, O' Fallon, MO  63368-2240
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $     1,639.58           for the first      120      months of this Note, and thereafter will be in the amount of U.S. $ 2,300.96              . The Note Holder will notify me prior to the date of change in monthly payment.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment

MULTISTATE INTEREST-ONLY PERIOD FIXED RATE NOTE-Single Family-Fannie Mae UNIFORM INSTRUMENT

Form 3271 1/01 (rev. 9/06)

Wolters Kluwer Financial Services

VMP ®-836N (0609)

Page 1 of 3

Initials:



unless the Note Holder agrees in writing to those changes. However, if the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      15      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.000 % of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

Form 3271 1/01 (rev. 9/06)
Initials: _____
CitiMortgage 3.2.8.13 V8

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Gary W. Atkinson                                    -Borrower

*(Sign Original Only)*

Pay to the order of

without recourse on us CitiMortgage, Inc.

Janet L. Sims, Senior Vice President
CitiMortgage, Inc.

VMP ® -836N (0609)

Form 3271 1/01 (rev. 9/06)
CitiMortgage 3.2.8.13 V8



EXHIBIT B

**3645166**

Receipt#: █████████

| | |
|---|---|
| MTG | $46.00 |
| MRT | $724.04 |
| Conservation Fee: | $5.00 |

Certified Filed and/or recorded on:
5/24/2007   4:03 PM

**3645166**

Office of the County Recorder
Property Records & Taxpayer Services
Washington County, MN

*Kevin J Corbid, County Recorder*
*Molly O Rourke, Auditor Treasurer*

Return to:
BANKERS TITLE
1060 DAKOTA DRIVE
MENDOTA HEIGHTS MN 55120

──────── [Space Above This Line For Recording Data] ────────

# MORTGAGE

MI█████████████

Return To:

CitiMortgage, Inc.
Attn: Document Processing
P.O. Box 790021
St. Louis, MO  63179-0021

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated May 18, 2007 together with all Riders to this document.

(B) "Borrower" is Gary W. Atkinson, a single man

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is CitiMortgage, Inc.

Lender is a Corporation
organized and existing under the laws of New York
Lender's address is 1000 Technology Drive, O' Fallon, MO 63368-2240

(E) "Note" means the promissory note signed by Borrower and dated May 18, 2007
The Note states that Borrower owes Lender Three Hundred Fourteen Thousand Eight Hundred

Dollars
(U.S. $314,800.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than June 1, 2037

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | Schedule ``A'' |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

Initials: _____

Form 3024   1/01
CitiMortgage 3.2.8.13 V8

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the County of **WASHINGTON** :

[Type of Recording Jurisdiction]                           [Name of Recording Jurisdiction]:

**See Schedule A Attached Hereto And Made A PartHereof**

Parcel ID Number:                                    which currently has the address of
7800 Somerset Road                                                                [Street]
Woodbury                              [City], Minnesota  55125-3360     [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Initials

Form 3024  1/01
CitiMortgage 3.2.8.13 V8

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

Initials _____

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's

-6A(MN) (0005).02

Form 3024   1/01
CitiMortgage 3.2.8.13 V8

knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and

Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless

Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal


Initials

Form 3024  1/01
CitiMortgage 3.2.8.13 V8

owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument at the time such documents are executed or within a reasonable time thereafter.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security

Initials: _____

-6A(MN) (0005).02

Form 3024   1/01
CitiMortgage 3.2.8.13 V8

Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower by certified mail to the address of the Property or another address designated by Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon any person in possession of the Property. Lender shall publish a notice of sale, and the Property shall be sold at public auction in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

25. **Interest on Advances.** The interest rate on advances made by Lender under this Security Instrument shall not exceed the maximum rate allowed by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    (Sign Original Only) *[signature]*

_____ (Seal)

GaryWW. Atkinson                                    -Borrower

_____



STATE OF MINNESOTA, Dakota County ss:

On this 15th day of May 2007 , before me appeared

 Gary W. Atkinson, a single man

to me personally known to be the person(s) described in and who executed the foregoing instrument and acknowledged that he/she/they executed the same as his/her/their free act and deed.

Notary Public

My Commission Expires: 1-31-2008

MATHEW CHARLES MOHS
NOTARY PUBLIC – MINNESOTA
MY COMMISSION EXPIRES 1-31-2008

This instrument was drafted by:
CitiMortgage, Inc.
699 Walnut
Des Moines, IA  50309

Tax statements for the real property described in this instrument should be sent to:
CitiMortgage, Inc.
P.O. Box 1800
Attn: Tax Dept
Farmington Hills, MI  48334-3357

**Lot 3, Block 1, Woodbury Pines 1st Addition, Washington County, Minnesota**
**Abstract Property**

EXHIBIT C

Receipt#:

AM                          $46.00

Certified Filed and/or recorded on:
1/10/2011   10:40 AM

**3825948**

Return to:
USSET WEINGARDEN & LIEBO PLLP
4500 PARK GLEN ROAD
SUITE 300
ST. LOUIS PARK MN 55416

Office of the County Recorder
Property Records & Taxpayer Services
Washington County, MN

*Kevin J Corbid, County Recorder*

ASSIGNMENT OF MORTGAGE

Date: ———————— DEC 3 0 2010 ————————

FOR VALUABLE CONSIDERATION, Mortgage Electronic Registration Systems, Inc., a corporation under the laws of Delaware, Assignor, hereby sells, assigns, transfers to *CitiMortgage, Inc.*, Assignee, *1000 Technology Dr., O'Fallon, MO 63368*, the Assignor's interest in the Mortgage dated *May 18th, 2007*, executed *Gary W Atkinson, A Single man*, as mortgagor(s) to *Mortgage Electronic Registration Systems, Inc. as nominee for CitiMortgage, Inc.*, as mortgagee, filed for record in the office of the County Recorder/Registrar of Title of the County of *Washington* and State of Minnesota, on *May 24th, 2007*, and recorded as Document No. *3645166* together with all right and interest in the land therein described, and in the note and obligations therein specified, and to the debt thereby secured.

Assignor covenants with Assignee, its successors and assigns, that Assignor has good right to sell, assign, and transfer the same.

Mortgage Electronic Registration Systems, Inc.

By: _____

Aaron Menne, Assistant Secretary

STATE OF    MISSOURI             )

COUNTY OF   ST. CHARLES          )

The foregoing instrument was acknowledged before me on DEC 2 0 2010 _____, by Aaron Menne, the Assistant Secretary of Mortgage Electronic Registration Systems, Inc., a corporation under the laws of Delaware, on behalf of the corporation.

_____
Notary Public

THIS INSTRUMENT WAS DRAFTED BY:

CitiMortgage, Inc.
1000 Technology Dr.
O'Fallon, MO 63368

GINA WEINAND
Notary Public-Notary Seal
State of Missouri, St Charles County
Commission # 07434724
My Commission Expires Dec 6, 2011



Return to:
CT LIEN SOLUTIONS
P.O. BOX 29071
GLENDALE CA 91209

Certified Filed and/or recorded on:
3/20/2014 9:15 AM

**3982763**

Office of the County Recorder
Washington County, Minnesota
*Jennifer Wagenius, County Recorder*

After Recording Return to:                    Prepared By:
CT LIEN SOLUTIONS                            CITIMORTGAGE, INC
PO BOX 29071                                 DEEPIKA RAJAGOPALAN
GLENDALE , CA 91209-9071                      1000 TECHNOLOGY DRIVE, MS 321
                                             O'FALLON , MO 63368-2240

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that CitiMortgage, Inc. , for good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, does hereby sell, assign, transfer, and set over to US Bank National Association as Trustee for CMALT REMIC 2007-A7 - REMIC Pass-Through Certificates Series 2007-A7 , Assignee Address: 60 LIVINGSTON AVE., MAIL CODE EP-MN-WS3D, ST. PAUL, MN, 55107 , that certain mortgage executed by Gary W. Atkinson  as mortgagor, to  Mortgage Electronic Registration Systems, Inc. as nominee for CitiMortgage, Inc. its successors and assigns  dated 05/18/2007 , filed for the record on 05/24/2007  in the office of the Washington County  Recorder/Registrar of Titles as Book: NA Page: NA Instrument No: 3645166 , and does hereby covenant with the assignee, that it has good right to sell, assign and transfer the same.

Dated: 3/6/14

CitiMortgage, Inc.
By Daniella Ochoa
Name Daniella Ochoa
Title: Document Control Officer

STATE OF **MISSOURI, ST. CHARLES COUNTY**

On 3-6-14 before me, the undersigned, a notary public in and for said state, personally appeared **Daniella Ochoa, Document Control Officer** of **CitiMortgage, Inc.** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public **Tonja Brooks**

TONJA BROOKS
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Louis County
My Commission Expires: July 25, 2016
Commission Number: 12372473

Commission Expires: 07/25/2016

EXHIBIT D



Doc No **T05210008**

Certified, filed and/or recorded on
Oct 28, 2014 9:03 AM

Office of the Registrar of Titles
Hennepin County, Minnesota
Martin McCormick, Registrar of Titles
Mark Chapin, County Auditor and Treasurer

Deputy 77                                          Pkg ID 1168091E

Doc Name: **Limited Power of Attorney**

| Document Recording Fee | $46.00 |
|---|---|
| *Document Total* | $46.00 |

**Existing Certs**

1142541

This cover sheet is now a permanent part of the recorded document.



Doc No **A10128299**

Certified, filed and/or recorded on
Oct 17, 2014 2:58 PM

Office of the County Recorder
Hennepin County, Minnesota
Martin McMormick, County Recorder
Mark Chapin, County Auditor and Treasurer

Deputy 59                                                    Pkg ID 1164962E

Doc Name: **Limited Power of Attorney**

Document Recording Fee                                    $46.00

***Document Total***                                      $46.00

This cover sheet is now a permanent part of the recorded document.

_____ SPACE ABOVE THIS LINE FOR RECORDER'S USE _____

## *LIMITED POWER OF ATTORNEY*

**US Bank National Association**, a national banking association organized and existing under the laws of the United States of America, 180 East Fifth Street, Corporate Trust, 2nd Floor, St. Paul, MN 55101 hereby constitutes and appoints CitiMortgage Inc., and in its name, aforesaid Attorney-In-Fact, by and through any officers appointed by the Board of Directors of CitiMortgage, Inc. to execute and acknowledge in writing or by facsimile stamp all documents customarily and reasonably necessary and appropriate for the task described in items (1) through (4) below; provided however, that the documents described below may only be executed and delivered by such Attorneys-In-Fact if such documents are required or permitted under the terms of the related servicing agreements and no power is granted hereunder to take any action that would be adverse to the interests of the Trustee or the Holders. This Power of Attorney is being issued in connection with CitiMortgage, Inc.'s responsibilities to service certain mortgage loans (the "Loans") held by US Bank National Association in its capacity as Trustee. These Loans are comprised of Mortgages, Deeds of Trust, Deeds to Secure Debt and other forms of Security Instruments (collectively the "Security Instruments") and the Notes secured thereby.

1. Demand, sue for, recover, collect and receive each and every sum of money, debt, account and interest (which now is, or hereafter shall become due and payable) belonging to or claimed by US Bank National Association, and to use of take any lawful means for recovery by legal process or otherwise.

2. Transact business of any kind regarding the Loans, and obtain an interest therein and/or buildings thereon, as US Bank National Association act and deed, to contract for, purchase, receive and take possession and evidence of title in and to the property and/or to secure payment of a promissory note or performance of any obligation or agreement.

3. Execute bonds, notes, mortgages, deeds of trust and other contracts, agreements and instruments regarding the Borrowers and/or the Property, including but not limited to the execution of releases, satisfactions, assignments, and other instruments pertaining to mortgages or deeds of trust, and execution of deeds and associated instruments, if any, conveying the Property, in the interest of US Bank National Association.

4. Endorse on behalf of the undersigned all checks, drafts and/or other negotiable instruments made payable to the undersigned.

Witness my hand and seal this _____ day of OCT 0 1 2001 , _____ .

(Seal) **NO CORPORATE SEAL**                          US BANK NATIONAL ASSOCIATION, as Trustee

_Jim McA_                          By: _____
Witness  _Karen Warren_  Jim McDonough       S. Christopherson  Vice President
Witness                          Karen Warren

_Linda M. Kruse_                          By: _____
Attest:  Linda M. Kruse  Asst. Secretary       Eve D. Kaplan        Vice President
         Trust Officer              FOR CORPORATE ACKNOWLEDGMENT

STATE OF MINNESOTA      )ss
COUNTY OF RAMSEY  )

On this _____ day of OCT 0 1 2001 _____, before me the undersigned, a Notary Public in and for said County and State, personally appeared _____ S. Christopherson _____, _____ Vice President _____ and _____ Eve D. Kaplan _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons who executed the within instrument as Vice Presidents and Assistant Secretary respectively, of the corporation that executed the within instrument; and known to me to be the persons who executed the within instrument on behalf of the corporation therein named, and acknowledged to me that such corporation executed the within instrument pursuant to its by-laws or a resolution of its Boards of Directors.

WITNESS my hand and official seal.

Signature _Shana Bloom_                          (NOTARY SEAL)

My commission expires:

SHANA BLOOM
Notary Public
Minnesota
My Commission Expires Jan. 31, 2005



200906160000130 Bk: 4057 Pg: 275
RECORDED Cranston, RI  Pg 1 of 2
06/16/2009  11:33:00  PR ATTY

## LIMITED POWER OF ATTORNEY

Pursuant to the Subservicing Agreement  (as amended, restated, supplemented or otherwise modified from time to time, the "Agreement"; capitalized terms not defined herein have the definitions assigned to such terms in the Agreement), dated as of June 29, 2007, among CitiMortgage, Inc. ("CitiMortgage"), as Owner/Servicer and Cenlar FSB as Subservicer, CitiMortgage, Inc. hereby appoints Cenlar FSB as its true and lawful attorney-in-fact and in its name, place and stead to take the following designated actions with respect to any mortgage loan or real estate owned property (collectively, the "Mortgage Loans") which is subject to the Agreement:

1. To ask, demand, sue for, collect and receive all sums of money, debts or other obligations of any kind with respect to a Mortgage Loan which are now or shall after this date become due, owing or payable, or otherwise belong to CitiMortgage; to settle and compromise any of such debts or obligations that may be or become due to CitiMortgage; to endorse in the name of CitiMortgage for deposit in the appropriate account any instrument payable to or to the order of CitiMortgage; in each case with respect to a Mortgage Loan.

2. To make demand(s) on behalf of CitiMortgage upon any or all parties liable on a Mortgage Loan; to declare defaults with respect to a Mortgage Loan; to give notices of intention to accelerate; to give notices of acceleration and any other notices as CitiMortgage deems reasonably necessary or appropriate; to post all notices as required by law and the documents securing a Mortgage Loan in order to foreclose such Mortgage Loan; to handle all aspects of foreclosure on behalf of CitiMortgage, including, but not limited to, conducting the foreclosure sale, bidding for CitiMortgage and executing all documents, including all deeds and conveyances, needed to effect such foreclosure sale and/or liquidation; to execute any documents or instruments necessary for the offer, listing, closing of sale, and conveyance of REO property, including, but not limited to, grant, warranty, quit claim and statutory deeds or similar instruments of conveyance; to execute any documents or instruments in connection with any bankruptcy or receivership of a mortgagor on a Mortgage Loan; to take such other actions and exercise such rights which may he taken by CitiMortgage under the terns of any Mortgage Loan, including, but not limited to, satisfaction, release, cancellation or discharge of mortgage, eviction, unlawful detainer, or similar dispossessory proceeding, sale, taking possession of, release of security instruments, realization upon all or any part of a Mortgage Loan or any collateral thereof or guaranty thereof; and to assign, convey, accept, or otherwise transfer, CitiMortgage's interest in any Mortgage Loan.

3. To perform all other acts and do all other things as may be necessary or convenient to manage and service the Mortgage Loans under the terms of the Agreement.

This instrument is to be construed and interpreted as a Limited Power of Attorney regarding a Mortgage Loan. The enumeration of specific items, acts, rights and powers is not intended to, nor does it give rise to and it is not to be construed as a general power of attorney.

The rights, powers and authority of Cenlar FSB as attorney-in-fact of CitiMortgage under this Limited Power of Attorney shall continence on the date of execution hereof and shall remain in full force and effect as a limited and revocable power of attorney which may he revoked at any time in writing by CitiMortgage.

This Limited Power of Attorney shall be governed by and construed in accordance with the laws of the State of New Jersey,

IN WITNESS WHEREOF CitiMortgage, Inc. has hereunto caused this Limited Power of Attorney to be executed by its duly authorized representatives on this 12th day of September, 2008.

**CITIMORTGAGE, INC.**

200906160000130 Bk: 4057 Pg: 276
RECORDED Cranston, RI  Pg 2 of 2
06/16/2009 11:33:00  PR ATTY

By: _____

Name:  Matthew Hurley
Title:   Vice President
         1000 Technology Drive.
         O'Fallon, MO 63368

State of      Missouri

County of   St.Charles

I CERTIFY that on September 12, 2008,  Matthew Hurley came before me in person and stated to my satisfaction that he:

(a)  made the attached instrument;  and,

(b)  was authorized to and did execute this instrument on behalf of and as Vice President of CitiMortgage, Inc. the entity named in this instrument.

_____

S. Porter
{Stamp & Seal}

S. PORTER
Notary Public, Notary Seal
State of Missouri
St. Charles County
Commission # 05479622
My Commission Expires June 27, 2009

EXHIBIT E

# Washington County

**Property Records and Taxpayer Services**
(651) 430-6175
www.co.washington.mn.us

14949 62nd Street North
PO Box 200
Stillwater, MN 55082-0006

**Property ID:** 08.028.21.11.0004   Bill

**Taxpayer:**

GARY WARD ATKINSON
7800 SOMERSET RD
WOODBURY MN 55125-3360

## VALUES AND CLASSIFICATION

| Taxes Payable Year: | 2020 | 2021 |
|---|---|---|
| Estimated Market Value: | 341,700 | 349,500 |
| Homestead Exclusion: | 6,500 | 5,800 |
| Taxable Market Value: | 335,200 | 343,700 |
| New Improvements: | | |
| Property Classification: | Res Hstd | Res Hstd |

**Step 1**

*Sent in March 2020*

**Step 2** — PROPOSED TAX

*Did not include special assessments or referenda approved by the voters at the November election*   **$4,514.00**

*Sent in November 2020*

**Step 3** — PROPERTY TAX STATEMENT

| | | |
|---|---|---|
| First half taxes due | May 15 | $2,744.00 |
| Second half taxes due | October 15 | $2,744.00 |
| Total Taxes Due in 2021: | | $5,488.00 |

## $$$ REFUNDS?

*You may be eligible for one or even two refunds to reduce your property tax. Read the back of this statement to find out how to apply.*

**Property Address:**
7800 SOMERSET RD
WOODBURY MN 55125

**Property Description:**
WOODBURY PINES 1ST ADD Lot 3 Block 1

**Line 13 Special Assessment Detail:**

| | |
|---|---|
| DELINQ UTILITY BILL | 607.63 |
| 2014 ROADWAY REHAB | 305.36 |
| SWWS STORMWATER UTILITY-PAY 2021 | 53.00 |
| COUNTY ENVIRONMENTAL CHARGE PHE DEPT | 3.00 |

| | |
|---|---|
| Principal: | 968.99 |
| Interest: | 0.00 |

## Tax Detail for Your Property:

| Taxes Payable Year: | | 2020 | 2021 |
|---|---|---|---|
| 1. Use this amount on Form M1PR to see if you are eligible for a property tax refund. File by August 15. If this box is checked, you owe delinquent taxes and are not eligible. | | | $4,519.01 |
| 2. Use these amounts on Form M1PR to see if you are eligible for a special refund. ☐ | | $4,501.60 | |
| 3. Property taxes before credits | | $4,501.60 | $4,519.01 |
| 4. Credits that reduce property taxes | A. Agricultural and rural land credits | $0.00 | $0.00 |
| | B. Other Credits | $0.00 | $0.00 |
| 5. Property taxes after credits | | $4,501.60 | $4,519.01 |
| 6. WASHINGTON COUNTY | A. County General | $970.50 | $942.53 |
| | B. County Regional Rail Authority | $5.53 | $5.40 |
| 7. CITY OF WOODBURY | | $1,089.04 | $1,110.10 |
| 8. State General Tax | | $0.00 | $0.00 |
| 9. ISD 833 SOUTH WASHINGTON | A. Voter approved levies | $1,453.34 | $1,442.67 |
| | B. Other Local Levies | $797.74 | $835.87 |
| 10. Special Taxing Districts | A. Metropolitan Council | $19.56 | $21.59 |
| | B. Metropolitan Council Transit | $41.67 | $39.16 |
| | C. Metropolitan Mosquito Control | $13.09 | $13.04 |
| | D. South Washington Watershed | $25.68 | $25.51 |
| | E. County CDA | $45.45 | $44.30 |
| | F. City HRA | $7.31 | $7.10 |
| 11. Non-school voter approved referenda levies | | $32.69 | $31.74 |
| 12. Total property tax before special assessments | | $4,501.60 | $4,519.01 |
| 13. Special assessments | | $936.40 | $968.99 |
| 14. TOTAL PROPERTY TAX AND SPECIAL ASSESSMENTS | | $5,438.00 | $5,488.00 |

---

3-1-21_v4   **Please fold on perforation BEFORE tearing**  ✂

## PAYABLE 2021 2nd HALF PAYMENT STUB

**TO AVOID PENALTY PAY ON OR BEFORE: October 15**

**Property ID:** 08.028.21.11.0004   Bill #:

**Taxpayer:**
GARY WARD ATKINSON
7800 SOMERSET RD
WOODBURY MN 55125-3360

**Detach at perforation** & mail this stub with your 2nd half payment in the enclosed envelope

Res Hstd

*SECOND HALF TAX AMT*
**$2,744.00**

\*\*ESCROW NOTE\*\* Your taxes have been sent to escrow agent CENLAR FED SAVINGS BANK. If you do not escrow your taxes, please pay the amount indicated in the box.

*No Receipt sent. Your canceled check is proof of payment. Do not send postdated checks.*

*MAKE CHECKS PAYABLE TO:*   ☐ CHECK   ☐ CASH

WASHINGTON COUNTY
P.O. BOX 200
STILLWATER MN 55082-0200

---

**Please fold on perforation BEFORE tearing**  ✂

## PAYABLE 2021 1st HALF PAYMENT STUB

**TO AVOID PENALTY PAY ON OR BEFORE: May 15**

**Property ID:** 08.028.21.11.0004   Bill

**Taxpayer:**
GARY WARD ATKINSON
7800 SOMERSET RD
WOODBURY MN 55125-3360

**Detach at perforation** & mail this stub with your 1st half payment in the enclosed envelope

Res Hstd

*FIRST HALF TAX AMT*
**$2,744.00**

\*\*ESCROW NOTE\*\* Your taxes have been sent to escrow agent CENLAR FED SAVINGS BANK. If you do not escrow your taxes, please pay the amount indicated in the box.

*No Receipt sent. Your canceled check is proof of payment. Do not send postdated checks.*

*MAKE CHECKS PAYABLE TO:*   ☐ CHECK   ☐ CASH

WASHINGTON COUNTY
P.O. BOX 200
STILLWATER MN 55082-0200

EXHIBIT F

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

In re:  GARY WARD ATKINSON  Case No. 18-32633

Debtors.

## LOAN HISTORY

Begin loan history from the date of the first default related to the default amount that is claimed in the motion.

| Date payment due | Date payment received | Date to which payment applied (mo/yr) | Amount rec'd from debtor | CHARGES | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | Monthly amount due: Principal + Interest | Monthly amount due: Escrow | Amount due: Late Fees | Amount due: Other charge* | Description of charge |
| 9/1/2018 | | | | $2,300.96 | $567.42 | | | |
| 10/1/2018 | | | | $2,300.96 | $567.42 | | | |
| 11/1/2018 | | | | $2,300.96 | $567.42 | | | |
| 12/1/2018 | | | | $2,300.96 | $567.42 | | | |
| 1/1/2019 | | | | $2,300.96 | $567.42 | | | |
| 2/1/2019 | | | | $2,300.96 | $567.42 | | | |
| 3/1/2019 | | | | $2,300.96 | $567.42 | | | |
| 4/1/2019 | | | | $2,300.96 | $567.42 | | | |
| 5/1/2019 | | | | $2,300.96 | $567.42 | | | |
| 6/1/2019 | | | | $2,300.96 | $567.42 | | | |
| 7/1/2019 | | | | $2,300.96 | $539.56 | | | |
| 8/1/2019 | | | | $2,300.96 | $539.56 | | | |
| 9/1/2019 | | | | $2,300.96 | $539.56 | | | |
| 10/1/2019 | | | | $2,300.96 | $539.56 | | | |
| 11/1/2019 | | | | $2,300.96 | $539.56 | | | |
| 12/1/2019 | | | | $2,300.96 | $539.56 | | | |
| 1/1/2020 | | | | $2,300.96 | $539.56 | | | |
| 2/1/2020 | | | | $2,300.96 | $539.56 | | | |
| 3/1/2020 | | | | $2,300.96 | $539.56 | | | |
| 4/1/2020 | | | | $2,300.96 | $539.56 | | | |
| 5/1/2020 | | | | $2,300.96 | $539.56 | | | |
| 6/1/2020 | | | | $2,300.96 | $539.56 | | | |
| 7/1/2020 | | | | $2,300.96 | $539.56 | | | |
| 8/1/2020 | | | | $2,300.96 | $539.56 | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 9/1/2020 | | | | $2,300.96 | $582.11 | | | |
| 10/1/2020 | | | | $2,300.96 | $582.11 | | | |
| 11/1/2020 | | | | $2,300.96 | $582.11 | | | |
| 12/1/2020 | | | | $2,300.96 | $582.11 | | | |
| 1/1/2021 | | | | $2,300.96 | $582.11 | | | |
| 2/1/2021 | | | | $2,300.96 | $582.11 | | | |
| 3/1/2021 | | | | $2,300.96 | $582.11 | | | |
| 4/1/2021 | | | | $2,300.96 | $582.11 | | | |
| 5/1/2021 | | | | $2,300.96 | $582.11 | | | |
| 6/1/2021 | | | | $2,300.96 | $582.11 | | | |
| 7/1/2021 | | | | $2,300.96 | $582.11 | | | |
| 8/1/2021 | | | | $2,300.96 | $582.11 | | | |
| 9/1/2021 | | | | $2,300.96 | $604.63 | | | |
| | | | | | | | $1,238.00 | Motion Fees and Cost |
| | | | | | | | | |
| TOTALS: | | | $0.00 | $85,135.52 | $20,817.99 | $0.00 | $1,238.00 | |
| | | | (a) | (b) | (c) | (d) | (e) | |

\* Any "Other Charge" must be described, itemized by amount and allowed under note and/or mortgage (e.g., inspection fee, appraisal fee, insurance, taxes, etc.).

Default amount claimed in the motion.                    $107,191.51

**Note: Total amount due (columns (b) + (c) + (d) + (e)) less amount received from debtor (column (a)) must equal the default amount claimed in the motion.**

Attorneys fees and filing fee for the motion, if allowed under note
and/or mortgage and sought by Movant to resolve motion.                    $1,238.00

Escrow balance (amounts held for payment of taxes, insurance,                    $81,182.62

Suspense account balance (amount of un-applied payments).                    $0.00

IN RE:

**Gary Ward Atkinson**

        **DEBTOR**

**CASE NO. 18-32633**

**CHAPTER 13**

## MEMORANDUM OF LAW

Cenlar, FSB as servicer for CitiMortgage, Inc., servicer for U.S. Bank National Association as trustee for CMALT REMIC 2007-A7 - REMIC Pass-Through Certificates Series 2007-A7 ("Movant"), submits this memorandum of law in support of its Motion for Relief from the stay in the above-entitled matter.

## FACTS

On May 18, 2007, Debtor Gary Ward Atkinson made, executed, and delivered a Promissory Note to Mortgage Electronic Registration Systems, Inc. as nominee for CitiMortgage, Inc. for $314,800.00 ("Note"), which is secured by a Mortgage dated May 18, 2007, and recorded May 24, 2007, in Washington County as Document Number 3645166. Said Mortgage was executed by Debtor. The Mortgage has been assigned to Movant via assignments of mortgage. The mortgage encumbers real property at 7800 Somerset Road, Woodbury, Minnesota 55125.

The Debtor filed a petition under Chapter 13 of Title 11 of the U.S. Code, listing real property subject to a security interest held by the Movant in Schedule D. Pursuant to the Debtor's Chapter 13 plan, the Debtor agreed apply with CitiMortgage, Inc., former

assignee of the mortgage, for a loan modification on or before March 20, 2019. In the

event debtor failed to complete the loan modification on or before April 15, 2019, the

lender would be entitled to move for relief from the automatic stay. The Debtor in this

case has failed to complete any loss mitigation or loan modification, and is delinquent on

contractual payments due.

## ARGUMENT

## I.  THE MOVANT HAS STANDING TO BRING THIS MOTION FOR RELIEF FROM THE STAY TO FORECLOSE THE MORTGAGE

A "party in interest" has standing to make a motion for relief from the stay, after

notice and hearing.   11 U.S.C. § 362 (d).  The holder of a note and mortgage, or its

authorized agent, has standing to bring a stay relief motion.  *See, e.g., In re Jacobson,*

402 B.R. 359, 366 (Bankr. W.D. Wash. Mar. 6, 2009) (as modified Mar. 10, 2009).  In

the District of Minnesota, Local Bankruptcy Rule 4001-1 specifies the evidence that the

movant must provide to the court in order to prove standing for a motion for relief from

stay, including a copy of the note, copy of the mortgage recorded in the land records, any

assignments if the movant is not the original mortgagee, and any other evidence that the

movant has authority to make the motion.  Loc. R. Bankr. P. 4001-1(b)(1). *See also*

LRBP 90132(a); LRBP 9013-2(d).

Exhibits A through C submitted in support of this motion show the chain of title

that gives Movant standing to seek relief from the automatic stay.  The Note is made

payable to the Movant or has been duly indorsed. Movant has possession of the Note

directly or through an agent. The Mortgage was recorded in the county in which the

property is located, and the Movant is the original mortgagee, the beneficiary, or the assignee of the Mortgage. Furthermore, the Movant has submitted copies of limited power of attorney's which establishes the authority for Cenlar FSB to act on behalf of the Movant in this action and provide verification of the facts related to the motion. [See Exhibit D]. The Movant has provided sufficient evidence to show that it is a party entitled to enforce the terms of the Note and Mortgage, and likewise, that Movant has standing to bring this Motion for Relief.

## II. MOVANT IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY "FOR CAUSE" UNDER 11 U.S.C. § 362(d)(1)

Section 362(d) of the Bankruptcy Code governs relief from the automatic stay. 11 U.S.C. § 362(d). Under Section 362(d)(1), relief from the automatic stay shall be granted upon request of a party in interest "for cause, including the lack of adequate protection of an interest in property of such party." 11 U.S.C. § 362(d)(1). Cause has been defined to mean "any reason whereby a creditor is receiving less than his bargain from a debtor and is without a remedy because of the bankruptcy proceeding." *In re Martens*, 331 B.R. 395, 398 (8th Cir. B.A.P. 2005) (internal citation omitted). A secured creditor's interest is not adequately protected where its collateral is depreciating in value. *See United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc. Ltd.*, 484 U.S. 365, 370 (1988). Other grounds for granting relief from the stay to the creditor "for cause" include that the debtor is not insuring the property or the debtor is failing to pay ongoing utilities, real estate taxes, or homeowners' association dues which lead to liens that affect the creditor's position. *See, e.g., In re Biltwood Properties LLC*, 473 B.R. 70 (Bankr. M.D. Pa. 2012)

(although Chapter 11 debtor was making regular mortgage payments, the creditor was not adequately protected and was thus entitled to stay relief where the debtor had failed to pay real estate taxes resulting in a superior tax lien); *In re Harwood Hideout, Inc.*, 2005 WL 894828 (Bankr. D. N.D. 2005) (mortgagee was entitled to relief from the stay unless debtor provided proof of insurance and cured any existing tax deficiencies). The burden of proof is on the debtor to demonstrate lack of cause by showing that adequate protection has been provided to the creditor. 11 U.S.C. § 362(g)(2).

In a Chapter 13 bankruptcy, the purpose of the Plan is to provide adequate protection to the creditor. A Debtor's failure to make plan payments and comply with the terms of a Plan is grounds for a bankruptcy court to grant relief from the automatic stay "for cause." *Reinbold v. Dewey County Bank*, 942 F.2d 1304, 1306-07 (8th Cir. 1991).

Here, the Debtor has not maintained current post-petition payments with respect to the Note and Mortgage while this case is pending. *See* Exhibit F, Local Form 4001-1. Further, Debtor has not complied with requirements of Part 17.2 of the confirmed Chapter 13 Plan. Debtor has failed to complete a loan modification as required by the plan. Such circumstances constitute cause within the meaning of Section 362(d)(1), justifying relief from the stay.

## **CONCLUSION**

The facts set forth above establish adequate cause to support a lift of the automatic stay, and that the 14 day stay pursuant to Bankruptcy Rule 4001(a)(3) be waived. Therefore, the Movant is entitled to an Order for relief from the stay to foreclose its Mortgage on the property and protect its security interest under state law.

Respectfully submitted,

Dated: November 10, 2021

_/s/ Joseph M. Rossman_
Melissa L.B. Porter 0337778
Joseph M. Rossman 0397070
LOGS Legal Group LLP
12550 West Frontage Road
Suite 200
Burnsville, MN 55337
(952) 831-4060
logsecf@logs.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

IN RE:

**Gary Ward Atkinson**

                    **DEBTOR**

**CASE NO. 18-32633**

**CHAPTER 13**

## CERTIFICATE OF SERVICE

      The undersigned declares under penalty of perjury, that on November 10, 2021, I mailed U.S. Mail and CM/ECF emailed copies of the Amended Motion for Relief upon the following interested parties at their last known address:

Served Via U.S. Mail

Gary Ward Atkinson
P.O. Box 251211
Saint Paul, MN 55125

Served Via U.S. Certified Mail

Internal Revenue Service
Centralized Insolvency
Attn: Sara Mattson
PO Box 7346
Philadelphia PA 19101

United States Attorney for the District
of Minnesota
Attn: Civil Process Clerk
600 U.S. Courthouse
300 South 4th Street
Minneapolis, MN 55415

Minnesota Attorney General
Attn: Civil Process Clerk
445 Minnesota Street, Suite 1400
St. Paul, MN 55101

Attorney General of the United States
United States Department of Justice
Attn: Civil Process Clerk
950 Pennsylvania Avenue NW, Room 4400
Washington, D.C. 20530

State of Minnesota
Department of Revenue
Attn: Sara Westly
PO Box 64447
St. Paul MN 55164 0447

Evergreen Community Association
Attn: Managing Agent
P.O. Box 25603
Saint Paul, MN 55125

St Paul Federal Credit Union
Attn: Managing Agent
1330 Conway Street, #200
Saint Paul, MN 55106

Additional Copy(s) served electronically through the Court's ECF System or by first class U.S. mail postage addressed to:

John D Lamey, III, Lamey Law Firm, P.A.
980 Inwood Ave N
Oakdale, MN 55128

Gregory A Burrell
100 South Fifth Street
Suite 480
Minneapolis, MN 55402

US Trustee
1015 US Courthouse
300 S 4th Street
Minneapolis, MN 55415

_/s/Netia Myles_____

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MINNESOTA

IN RE:

Gary Ward Atkinson

DEBTOR

CASE NO. 18-32633

CHAPTER 13

## <u>ORDER GRANTING RELIEF</u>

This case is before the court on the motion of Cenlar, FSB as servicer for CitiMortgage, Inc., servicer for U.S. Bank National Association as trustee for CMALT REMIC 2007-A7 - REMIC Pass-Through Certificates Series 2007-A7, for relief from the automatic stay imposed by 11 U.S.C. § 362(a).

Based on the records, the court finds that grounds exist under 11 U.S.C. § 362(d) to warrant relief.

**IT IS ORDERED:**

1.     The motion for relief from stay is granted as follows.

2.     The automatic stay imposed by 11 U.S.C. § 362(a) is terminated such that the movant may exercise its rights and remedies under applicable nonbankruptcy law with respect to the following property:

> Lot 3, Block 1, Woodbury Pines 1st Addition, Washington County, Minnesota Abstract Property, Washington County, Minnesota

3.     Notwithstanding Federal Rule of Bankruptcy Procedure 4001(a)(3), this order is effective immediately.

4.      The Chapter 13 Trustee is not required to make further payments on the

pre-petition arrears claim of Movant.


Dated: _____        _____
                                      Katherine Constantine
                                      United States Bankruptcy Judge